# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **COREY EVANS** | ) |
| | ) |
| v. | ) |
| | ) No. 11 C 2425 |
| **UNITED STATES OF AMERICA** | ) |

## MEMORANDUM OPINION AND ORDER

In 2004, petitioner Corey Evans ("Evans") was arrested, along with numerous other members of the Black Disciples ("BD") street gang, for participating in a conspiracy to distribute illegal drugs in Chicago. Evans subsequently entered a blind plea of guilty to conspiracy to possess with the intent to distribute narcotics, 21 U.S.C. § 846, and use of a communication facility to distribute narcotics, 21 U.S.C. § 843(b), and was sentenced to 325 months in prison. He has filed a petition to vacate or correct his sentence pursuant to 28 U.S.C. § 2255, claiming that his counsel was constitutionally ineffective. For the reasons explained below, the petition is denied.

I

In order to prevail on a claim for ineffective assistance of counsel, Evans "must demonstrate that (1) counsel's performance fell outside the wide range of professionally competent assistance and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011)

(quotation marks omitted). Counsel is presumed to be effective, "and a defendant bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Malone*, 484 F.3d 916, 919 (7th Cir. 2007).

Evans first argues that his counsel was ineffective for failing to call any witnesses to "dispute false and therefore unreliable testimony that was made both before the Grand Jury and during the Derrick White trial." This claim fails for at least two reasons. To begin with, Evans fails to provide sufficiently precise information regarding the evidence he believes his counsel should have challenged, or about the witnesses who should have been called to challenge it. *See, e.g.*, *Miller v. United States*, 183 Fed. App'x. 571, 581 (7th Cir. 2006) ("Defendant has not filed an affidavit setting forth with precision exactly what his counsel did or failed to do that made a difference in the outcome of the proceedings."). "[C]ursory allegations that are purely speculative cannot support a claim of lack of competence of counsel." *U.S. ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1134 (7th Cir. 1990).

Second, Evans's counsel has submitted an affidavit averring that, for strategic reasons, he deliberately decided against calling witnesses at the sentencing hearing. He explains that his decision was based on concern about "potential government cross examination," and that, due to "the length of the investigation and the size of the drug quantities discussed in the conspiracy

charges, [he] believed that there was a real potential that the very favorable aspects of Corey Evans[sic] personal history in the Presentence Investigation Report would be overshadowed by the size and scope of the drug conspiracy and the issue of drug related violence which would implicate the issue of firearms." Gov't's Resp. Br., Ex. C ¶ 7. As the Seventh Circuit has frequently affirmed, "[a] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." *Valenzuela v. United States*, 261 F.3d 694, 699-700 (7th Cir. 2001) (quotation marks omitted). "So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel." *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (quotation marks omitted). Since the decision of Evans's counsel was clearly reasonable, his performance was not constitutionally ineffective for failing to call the witnesses to whom Evans alludes.

Next, Evans contends that his counsel was ineffective for failing to properly challenge the four-level enhancement he received under U.S.S.G. § 3B1.1 for being a leader or organizer of a criminal scheme. "Under U.S.S.G. § 3B1.1, a defendant's advisory Guidelines sentence can be increased based on the significance of her involvement in a criminal scheme." In particular, "U.S.S.G. § 3B1.1 prescribes a four-level enhancement when a defendant is the

leader or organizer of a criminal scheme involving five or more participants, and a three-level enhancement when a defendant is the manager or supervisor of a criminal scheme involving five or more participants." *United States v. Brownell*, 495 F.3d 459, 465 (7th Cir. 2007).

Although Evans's counsel did challenge the leadership enhancement at the sentencing hearing, Evans argues that the challenge was constitutionally ineffective because his role in the drug-dealing operation was far less significant than his counsel realized. Specifically, Evans maintains that, as a BD board member, he occupied only the third-highest level of authority in the BDs' organizational hierarchy, below the King, at the very top, followed by a group of so-called "Elder Board Members." Evans contends that, since BD members at these higher levels of authority received a four-level enhancement for their role in the conspiracy, he should have received a lesser enhancement.

This argument mistakenly assumes that only those at the highest level of power in a conspiracy may qualify as a "leader or organizer" within the meaning of 3B1.1(a). *Cf. United States v. Gomez-Solarte*, 181 F.3d 104 (6th Cir. 1999) (unpublished)("Section 3B1.1(a) addresses defendants who lead or organize 'a criminal activity,' which does not necessarily mean that they had to have led or organized the entire criminal activity with which they were charged. The more extensive the criminal enterprise, the greater

the need for 'leaders and organizers' at lower levels for it to function properly."); *United States v. Ortiz*, 878 F.2d 125, 127 (3d Cir. 1989). Instead, the Seventh Circuit has instructed that, "[i]n deciding to apply the enhancement, courts should consider: the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *United States v. Longstreet*, 567 F.3d 911, 925-26 (7th Cir. 2009).

In light of these factors, the record contained more than enough evidence to justify the 3B1.1(a) enhancement. Among other things, Evans admitted that he oversaw the distribution of illegal drugs in and around the building on Calumet Avenue in Chicago ("the Calumet Building"). He also collected taxes from individuals in exchange for permission to sell drugs in the area; and he ordered beatings of gang members who violated the gang's rules. Evans's reliance on *United States v. Vargas*, 16 F.3d 155 (7th Cir. 1994), is misplaced. *Vargas* held that the district court had erred in concluding that the defendant was a manager or supervisor under 3B1.1(b); however, the defendant's role there was not as substantial as Evans's. Unlike Evans, for example, Vargas had no authority or control over other participants in the illegal

enterprise; he merely had the authority to supply drugs and negotiate the terms of their sale. *Id.* at 160.

As the third basis for his petition, Evans faults his counsel for failing to effectively challenge the quantity of drugs for which he was held responsible. Evans pleaded guilty to conspiracy to possess with the intent to distribute in excess of 5 kilograms of powder cocaine; in excess of 50 grams of cocaine base; and in excess of 1 kilogram of heroin. At the sentencing, however, the government maintained (and I ultimately concluded) that Evans was responsible for 150 kilograms of cocaine, 1.5 kilograms of crack, and 30 kilograms of heroin. The evidence on which these figures was based was more than adequate. For example, Kenyatta Coates testified in other proceedings that he supplied Evans with about 20 kilograms of cocaine between 1999 and 2001; Mark Hall had testified that he sold Evans half-kilogram quantities of both powder cocaine and crack on a monthly basis from early 1999 to August 2000; Paris O'Bryant testified before the grand jury that Evans gave him quantities of crack to distribute out of the Calumet Building; and Varney Voker testified that he sold approximately 50 kilograms of crack and "way over 30 keys" of heroin as part of the operation. It is well-settled that, in "a drug conspiracy, each conspirator is responsible not only for drug quantities directly attributable to him but also for amounts involved in transactions by coconspirators that were reasonably foreseeable to him." *United States v. Turner*,

604 F.3d 381, 385 (7th Cir. 2010). Given his position as overseer of the drug-selling operations at the Calumet Building, all of these drug quantities are attributable to him.

Evans claims that, although his counsel challenged the government's drug quantity calculations at the sentencing hearing, his counsel was ineffective because he failed to challenge the testimony of Varney Voker ("Voker") and Mark Hall ("Hall"). Evans cites Voker's testimony "that he [Voker] ran and was in-charge-of the heroin and crack cocaine lines in the Calumet building for a certain period of time and paid a lot of different people while running both lines." Mem. at 10. According to Evans, this shows that it was Voker, not he, who was responsible for the selling of crack and heroin at the Calumet Building. The fact remains, however, that Voker paid street taxes to Evans and that Evans was ultimately in charge of drug activities in the building. Evans additionally claims that Voker's testimony is internally contradictory. He argues, "Voker starts off talking about 10 to 13 kilos? then he talks about 30 kilos, and from there he talks about 40 or 50 kilos of heroin, all regarding the same set of circumstances. Which is it[?]" Mem. at 14. But any appearance of inconsistency vanishes when it becomes clear that Voker offered the 30-kilo figure in response to a question about heroin, and the 40- or 50-kilo estimate in response to a question about crack.

Evans's attempt to undermine Hall's testimony is similarly

unpersuasive.  Evans points out that Hall testified at one point that he sold Evans about a kilo of powder and crack cocaine per month from early 1999 through August 2000.  He further points out that Hall later testified to having sold Evans more than 100 kilograms of crack cocaine over the period from 1999 to 2003.  Evans argues that these figures do not add up, since if Hall sold him a kilo per month for this period, he would at most have sold between 50 and 60 kilograms.  The problem with this argument, however, is that Hall never testified that he had sold Evans one kilo per month for the entire period in question.  He testified only that he sold at that rate from early 1999 to August 2000.  If one makes the entirely reasonable inference that Hall sold drugs in greater quantities to Evans after 2000, the discrepancy disappears.

And in any case, the drug quantity calculations were not supported only by Voker's and Hall's testimony.  The drug amounts were also supported and corroborated by witnesses such as Milton Evans, Paris O'Bryant, and Kenyatta Coates.  *See also* Sentencing Hrg Trans. 21:16-25:9 (summarizing evidence of drug quantity).  Thus, to identify problems regarding Voker's and Hall's testimony would not necessarily show any error as to the drug quantities for which he was held responsible.

In addition to the foregoing claims, Evans also briefly alludes to the two-level enhancement he received under U.S.S.G. § 2D1.1(b)(1) based on the fact that a dangerous weapon (a gun) was

possessed in connection with his drug offense.  Evans's counsel challenged the gun enhancement at the sentencing hearing; however, Evans contends that his attorney was ineffective for failing to call any witnesses in support of the challenge.  Evans argues that if witnesses had been called, he could have shown that not all of the guns in the Calumet Building were attributable to him.  He claims, for example, that witnesses could have testified that guns were carried by the Calumet Building's tenants for their own protection.

This argument falters at the outset because, as already noted, Evans's counsel has cited legitimate strategic reasons for not calling witnesses at the sentencing.  Even putting this aside, however, Evans has failed to show that presenting the evidence in question would have benefitted him.  For example, Paris O'Bryant testified that in one instance Evans himself personally gave him a handgun.  Reply Ex. 4.  In addition, multiple witnesses testified that Evans kept guns in Apartment 1007 of the Calumet Building to be used for security and other drug-selling activities. Given that Evans oversaw the gang's operations in the Calumet Building, he is "on the hook for firearms possessed by [his] coconspirators so long as such possession was reasonably foreseeable." *United States v. Luster*, 480 F.3d 551, 558 (7th Cir. 2007).  The notion that Evans did not possess a gun in connection with his drug offense simply is

not tenable.[1]  Given the overwhelming amount of evidence supporting the gun enhancement, Evans has not shown that he has suffered any prejudice as a result of his counsel's decision not to call witnesses.

II.

Evans's petition requests an evidentiary hearing. "A district court need not grant an evidentiary hearing in all § 2255 cases." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) (quotation marks omitted).  "Although an evidentiary hearing must be granted if the petitioner alleges facts that, if proven, would entitle him to relief," such "a hearing is not required if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* (quotation marks omitted).  "In addition, a hearing is not necessary if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." Rather,

---

[1] In his reply brief, Evans also claims in passing that he is entitled to resentencing in light of *Kimbrough*.  On Evans's direct appeal, however, the Seventh Circuit rejected this argument as frivolous. *See, e.g.*, *United States v. White*, 582 F.3d 787, 805 (7th Cir. 2009) ("The district court found Evans responsible for more than 1.5 kilograms of crack cocaine and 30 kilograms of heroin, which supported a guidelines range of 360 months to life. Even if the district court ignored the crack cocaine it attributed to him, the amount of heroin for which the court held Evans responsible results in the same base offense level of 38. After applying the appropriate weapon and leadership enhancements and the acceptance-of-responsibility reduction, Evans's advisory guidelines range remains 360 months to life. As such, any *Kimbrough* argument would be frivolous.").

"in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (quotation marks omitted).

In the affidavit accompanying his petition, Evans alleges that: "On or about the 17th of November, 2006, when I, Corey Evans, met with my attorney of record, Mr. James McGurk, I was told by Attorney McGurk, days before I was to be sentenced, and on the above date, which is the date of my sentencing the following: 'We didn't need to bring in any witnesses to be cross-examined, because that would be grounds for me, Corey Evans, to come back on an appeal.'" Evans Aff., Mem. Ex. 1.

McGurk has submitted an affidavit denying that he ever told Evans that if he "was wrong about the about not calling witnesses on behalf of Corey Evans, this fact could be a way for Corey Evans to appeal." McGurk Decl., Gov't's Resp., Ex C. Yet even assuming that Evans's allegations were true, he would not be entitled to an evidentiary hearing, for he has failed to offer any reason for thinking that he was prejudiced by McGurk's decision not to cross-examine the witnesses. As already observed, McGurk reasonably believed that any attempt to examine witnesses might backfire. Nor did McGurk need Evans's permission or agreement with his decision whether to call or examine witnesses. *See, e.g., Emerson v.*

*Gramley*, 91 F.3d 898, 902 (7th Cir. 1996) (Posner, J.) (the "decision whether or not to call a witness is a lawyer's tactical decision on which consultation with the client is not required," so long as the "decision rests on an adequate foundation") (citing *United States v. Ramos*, 832 F.2d 85, 88 (7th Cir. 1987); *United States v. Curtis*, 742 F.2d 1070, 1074-75 (7th Cir. 1984); *see also United States v. Saani*, --- F.3d ---- (D.C. Cir. 2011). The evidence supporting his leadership role and the amount of drugs for which he was responsible was overwhelming. Indeed, as the Seventh Circuit noted in connection with one of Evans's coconspirators, "the 1.5 kilograms of crack cocaine, 30 kilograms of heroin, and 150 kilograms of powder cocaine attributed to him each resulted in a base offense level of 38." *United States v. White*, 582 F.3d 787, 799 7th Cir. 2009); *see also* U.S.S.G. § 2D1.1(c)(1)(2006). The possibility that Evans would have received a lesser sentence is entirely speculative. Accordingly, Evans has not satisfied *Strickland*'s prejudice prong. *Cf. Prewitt v. United States*, 83 F.3d 812, 820 (7th Cir. 1996) (counsel was not ineffective for failing to argue for application of U.S.S.G. § 5G1.3(c), because there was only the "mere possibility" that defendant would have received concurrent sentences, and "the mere possibility of prejudice does not qualify as actual prejudice").

### III.

Under Rule 11 of the Rules Governing Section 2255 Cases, the

court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *United States v. Valadez*, No. 08 C 3178, 2010 WL 3306937, at *8 (N.D. Ill. Aug. 17, 2010) (quoting 28 U.S.C. § 2253(c)(2)). "To make a substantial showing the petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Span v. United States*, No. 07 C 2543, 2010 WL 3034240, at *18 (N.D. Ill. Aug.3, 2010) (quotation marks omitted). Because I find no basis on which reasonable jurists might disagree with the foregoing ruling, I deny Evans a certificate of appealability.

IV.

For the reasons discussed above, Evans's petition is denied and no certificate of appealability shall issue.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 15, 2011